**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REAPERS HOCKEY ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMATEUR HOCKEY ASSOCIATION ILLINOIS, INC., TEAM ILLINOIS HOCKEY CLUB, INC., CHICAGO MISSION AAA HOCKEY CLUB, INC., CHICAGO FURY, INC., and CHICAGO YOUNG AMERICANS, INC.,<br><br>Defendants. | ) | Case No. 19-cv-01302<br><br>Hon. Judge Manish S. Shah<br><br>Hon. Magistrate Judge Jeffrey Cummings |

**TEAM DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants TEAM ILLINOIS HOCKEY CLUB, INC., CHICAGO MISSION AAA HOCKEY CLUB, INC., CHICAGO FURY, INC., and CHICAGO YOUNG AMERICANS, INC. ("**CYA**") (collectively, the "**Teams**") by their attorneys, Mitchell D. Raup, Gregory M. Bentz, Anthony J. Nasharr, Rodney L. Lewis, and Sohil M. Shah of Polsinelli PC, and for their memorandum of law in support of their Motion to Dismiss the Complaint filed by plaintiff REAPERS HOCKEY ASSOCIATION, INC. (the "**Reapers**" or the "**Plaintiff**"), state as follows:

1. The Complaint Alleges No Harm Caused by the Teams, or that Could Be Remedied by Declaratory Relief Against The Teams.

The Teams should not be defendants in this action. Article III power extends only to "Cases" and "Controversies" between parties, U.S. Const., art. III, § 2, and in federal court the "plaintiff must demonstrate standing for each claim he seeks to press." *Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) (quoting *Davis v. FEC*, 554 U.S. 724, 734

(2008)). That requires showing that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). At the pleading stage, "the plaintiff must clearly . . . allege facts demonstrating each" element of standing. *Id*. (alteration in original; internal quotation marks omitted).

The Complaint does not establish any case or controversy between the Reapers and the Teams. The Reapers' alleged injuries are not fairly traceable to the Teams because the Complaint does not allege that the Teams *did the things* that injured the Reapers. Amateur Hockey Association Illinois, Inc. ("**AHAI**") made the 4-team rule, AHAI decided not to change that rule, and AHAI denied the Reapers' application for a Tier I charter. The Teams could not and did not do any of those things.

Nor does the Complaint suggest that the Reapers' alleged injuries could be redressed by relief against the Teams. The Teams could not reverse those AHAI decisions even if the Court ordered them to. Therefore, the preliminary injunction motion seeks no relief against the Teams. The Reapers do not need and do not request an injunction against the Teams, because the requested injunction against AHAI would give them all the relief they seek.

Similarly, Count I of the Complaint seeks no relief against the Teams, but only against AHAI. Count II is not brought against the Teams, so it seeks no relief against the Teams.

The only portions of the Complaint that even purport to seek relief against the Teams are Counts III and IV. In those counts, the Reapers seek only declaratory relief against the Teams, asking the Court to declare that the Teams "must not be directly or indirectly involved" in AHAI's decisions about Tier I charters, and that AHAI's decisions made "with input from the club defendants are void," but that merely rephrases the earlier request for an injunction against

AHAI's enforcement of its rules.[1] If the Reapers prevail against AHAI, they will not need relief against the Teams; if they lose against AHAI, they will not be entitled to relief against the Teams.

In any event, the Complaint does not explain how the requested declaratory relief against the Teams would redress the injuries the Reapers complain about. The Reapers conspicuously do not allege that representatives of the Teams hold a majority of AHAI's Board or that any such representatives even *voted* on the Board actions challenged here, much less that such votes were decisive. As a result, there is no reason to suppose that a declaratory judgment requiring the Teams to have no role in future Tier I team selection would alter the status quo. In short, the Plaintiff not shown it has standing to proceed against the Teams.[2] Because the Complaint does not allege that the Teams caused the Reapers harm, and does not seek relief against the Teams that could remedy that harm, it fails to state a claim against the Teams upon which relief can be granted.

2. <u>The Reapers' Allegations Of Conspiracy Fail The *Twombly* Test</u>.

The only basis on which the Reapers sued the Teams is that the Teams allegedly agreed with AHAI that AHAI would do what AHAI did. But the allegations of conspiracy are so vague

[1] Paragraph 10 of the Complaint says that "The Reapers seek also permanent injunctive relief (i) barring the Club Defendants from serving on AHAI's Tier I Committee, and (ii) barring the Club Defendants from otherwise being involved in deciding issues relating to the number of Tier I charters AHAI should issue and which clubs should be awarded those charters." However, that request is not in the Complaint's prayer for relief, which seeks no injunctive relief, and different "declaratory relief," against the Teams. *See* Count III, prayer for relief ¶ C; Count IV, prayer for relief ¶ D. In any event, the requested relief against the Teams (whether injunctive or declaratory) would be wholly unnecessary if the Reapers prevail on their claims against AHAI, and therefore could not be granted.

[2] Although the Court may look behind the pleadings to assess Plaintiff's new allegation (absent from the Complaint) that it has standing to pursue this claim as an assignee or successor in interest, *see Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015), for the purposes of Rule 12(b)(6), Plaintiff has not alleged facts in the complaint plausibly suggesting that, on the merits, *it* is entitled to the declaratory relief it seeks.

and conclusory that they cannot pass the *Twombly* test.[3] A complaint that merely presents "a conclusory allegation of agreement at some unidentified point" must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650, 657 (7th Cir. 2011).

The Reapers sued the Teams based on conclusory allegations that the Teams agreed with AHAI that AHAI would do three things: (1) adopt the 4-team rule many years ago, (2) decline to change that rule when the Reapers asked it to, and (3) deny the Reapers' application for a Tier I charter. These are all unilateral actions by AHAI, the only entity empowered to take such actions by U.S.A. Hockey. The Complaint alleges no facts about how, when, where or through which agents the Teams allegedly entered into agreements requiring AHAI to do those things.

a. AHAI's Decision to Adopt the 4-Team Rule. The allegation of conspiracy to adopt the 4-team rule is in paragraphs 51 and 53 of the Complaint. Paragraph 51 says only that in 2001 (long before the start of the 4-year limitations period applicable to this action), "AHAI President John Dunne and a group of AHAI Board members and representatives from the Club defendants including, but not limited to, Mike Mullally, Michael Barrett and Gino Cavallini . . . caused AHAI to change its rules and regulations to prevent any new Tier I clubs from receiving a charter to operate." Paragraph 53 adds no detail; it says only that "AHAI and the Club Defendants . . . caused AHAI to adopt" the new rule. Mr. Dunne, Mr. Mullally and Mr. Barrett are AHAI representatives, not representatives of any of the Teams. Complaint ¶¶ 66, 85. Mr. Cavallini is both an AHAI Board member and an executive of the Mission, *id.* ¶ 84, but he was not an AHAI Board member in 2001, *id.* ¶ 66. The Complaint does not identify anyone else

---

[3] Because Plaintiff alleges fraud in Count III, the heightened pleading standard of Fed. R. Civ. P. 9(b) applies. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) ("When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies."). Because Plaintiff's Count III claim cannot pass the *Twombly* test, it also cannot pass the Rule 9(b) heightened pleading standard.

who participated in the decision to change the rules, and it does not say how any of the Teams participated in that decision. Crucially, it does not say that the Teams or any Team representative had the power to "cause" AHAI to change its rules, or even to vote in favor of a change. To the contrary, the Complaint admits that only AHAI has the power to make rules governing its hockey leagues and tournaments. *Id.* ¶ 40. The allegation of conspiracy is therefore wholly conclusory.

b. AHAI's Decision Not to Change the 4-Team Rule. Paragraph 71 of the Complaint alleges that between 2015 and 2018, "AHAI leaders . . . continued to protect the Club Defendants by, among other things, maintaining the Four Club Restraint." Paragraph 99 alleges that in 2018, after hearing Mr. Dry's arguments, AHAI notified Mr. Dry that "AHAI had declined to rescind the Four Club Restraint." But the Complaint *never alleges* facts suggesting that the Teams conspired with AHAI to make that decision. If the Reapers could allege such facts without violating Rule 11, they would have. For example, the Reapers allege in some detail that AHAI created a "Tier I Committee" including representatives of the Teams, Complaint ¶¶ 59-62, and that the Tier I Committee made a "written recommendation to the full AHAI Board of Directors conveying the Committee's views as to whether to grant a fifth Tier I charter," *id.* ¶ 86, but they *do not allege* what the committee recommended or whether the Board followed the committee's recommendation. That falls far short of conspiracy.[4]

c. AHAI's Decision to Deny the Reapers' Application for a Charter. Finally, the Reapers allege no facts suggesting that the Teams conspired with AHAI to deny the Reapers a charter. That decision was made by "the full AHAI Board of Directors." Complaint ¶ 87. On October 1, 2018, the Board heard the Reapers' presentation and "question and answer session"

[4] As AHAI has shown in its pending motion to dismiss, merely lobbying AHAI about its rules would not violate the antitrust laws. See *Fishman v. Estate of Wirtz*, 807 F.2d 520, 544 (7th Cir. 1986). The Reapers must plead facts plausibly showing conspiracy, not just advocacy.

for about 45 minutes. *Id*. ¶ 93. Of the 14 current and former AHAI Board members who attended the October 1 meeting, only one (Gino Cavallini) is alleged to be a representative of any of the Teams. *Id*. ¶ 85. The complaint does not explain how this one team representative managed to "hijack" AHAI's Board and force it to deny the Reapers' application. *Id*. ¶ 2.

On January 7, 2019 "AHAI's Board convened in closed session" to vote on the Reapers' application. *Id*. ¶ 97. The Reapers admit that they did not attend the meeting and did not observe the vote. *Id*. ¶ 98. The Reapers therefore do not, and cannot, allege that any representative of any of the Teams attended the January 7 meeting, or cast a vote for or against the application.

Critically, the Complaint glosses over the fact that the ultimate decision to deny the Reapers' application was made by AHAI's largely independent Board, not by representatives of the Teams. According to the Complaint, the AHAI Board is vested with ultimate authority to grant or deny an application for a new Tier I charter under Rule 16.6.1. *Id.* ¶ 58. Yet the Complaint doesn't plausibly allege how the Teams effectuated a takeover of the AHAI Board with only one AHAI Board member (Gino Cavallini) having any alleged connection to any of the Teams. *Id.* ¶¶ 66, 85. The Complaint is simply silent on how this crucial ultimate decision to deny the Reapers' application resulted from a conspiracy with the Teams.

Here, as in *Twombly*, the Complaint "furnishes no clue as to which of the four [Teams] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." *Twombly*, 550 U.S. at 565 n. 10. The Complaint merely insinuates a motive to conspire, with no "independent allegation of actual agreement." *Id.* at 564. But allegations of motive (e.g., "the Four Club Restraint served the needs of Club Defendants and individuals affiliated with those clubs," complaint ¶ 54), are no substitute for plausible factual

allegations of "actual agreement." If motive to raise prices or limit output were enough, "then every company in every industry would have such a 'motive.'" *In re Baby Food Antitrust Litig.*, 166 F. 3d 112, 133 (3d Cir. 1999). Indeed, the leading antitrust treatise recognizes that the "[m]otivation to enter a conspiracy is never enough" to show an agreement. VI Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1411, at 68 (2d ed. 2003). The conclusory allegation that "Defendants' conduct amounts to conspiracy in restraint of trade," Complaint ¶ 6, adds nothing, because such conclusions "are not entitled to the assumption of truth" on a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

3. The Teams Join in AHAI's Motion to Dismiss.

The Reapers' claims against the Teams depend entirely on the claims against AHAI. If AHAI's rules and decisions were lawful, then it would be lawful for the teams to agree with AHAI that AHAI would adopt those rules and decisions. If the Complaint fails to state a claim against AHAI, it necessarily fails to state a claim against the Teams. The Teams therefore join in AHAI's motion to dismiss Counts I, III, and IV, and request that if the claims against AHAI are dismissed, the claims against the Teams be dismissed for the same reasons.[5]

[5] At the April 4, 2019 status conference, the Reapers clarified that they are alleging a *per se* violation of the antitrust laws. That does not excuse them from showing antitrust injury. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341 (1990) ("We … reject respondent's suggestion that no antitrust injury need be shown where a *per se* violation is involved."); *id.* at 344 ("[P]roof of a per se violation and of antitrust injury are distinct matters that must be shown independently.") (quoting P. Areeda & H. Hovenkamp, Antitrust Law ¶ 334.2c, p. 330 (1989 Supp.)).

Dated: April 8, 2019

TEAM ILLINOIS HOCKEY CLUB, INC., CHICAGO MISSION AAA HOCKEY CLUB, INC., CHICAGO FURY, INC., and CHICAGO YOUNG AMERICANS, INC.

By: */s/ Mitchell D. Raup*
One of their Attorneys

Mitchell D. Raup (ARDC: 6185120)
Polsinelli PC
1401 Eye Street N.W., Suite 800
Washington, DC 20005
202.783.3300
mraup@polsinelli.com

Gregory M. Bentz (admitted *pro hac vice*)
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
816.753.1000
gbentz@polsinelli.com

Anthony J. Nasharr (ARDC: 6185855)
Rodney L. Lewis (ARDC: 6288353)
Sohil M. Shah (ARDC: 6316678)
Polsinelli PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
312.819.1900
anasharr@polsinelli.com
rodney.lewis@polsinelli.com
sshah@polsinelli.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 8, 2019, I will electronically file the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send a notification of such filing to all counsel of record.

*/s/ Mitchell D. Raup*