**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REAPERS HOCKEY ASSOCIATION, INC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-01302 |
| v. | ) ) | Judge Manish S. Shah |
| AMATEUR HOCKEY ASSOCIATION ILLINOIS, INC., TEAM ILLINOIS HOCKEY CLUB, INC., CHICAGO MISSION AAA HOCKEY CLUB, INC., CHICAGO FURY, INC., and CHICAGO YOUNG AMERICANS, INC., | ) ) ) ) ) ) | Magistrate Judge Jeffrey Cummings |
| Defendants. | ) | |

## PLAINTIFF REAPERS HOCKEY ASSOCIATION INC.'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

DATED: April 12, 2019

Respectfully submitted,

**ULMER & BERNE LLP**

By:   /s/ Shawn J. Gebhardt
  Ronald S. Betman
  Shawn J. Gebhardt
  Ulmer & Berne LLP
  500 W. Madison, Suite 3600
  Chicago, IL 60661
  312-658-6500 (phone)
  312-658-6501 (fax)
  rbetman@ulmer.com
  sgebhardt@ulmer.com

  *Attorneys for Reapers Hockey Association*

**TABLE OF CONTENTS**

I.   The Reapers has Article III Standing ........................................................................ 5

II.  The Reapers Properly Pled Antitrust Injury For Its Sherman Act Claims ........................ 10

III.  Implied Antitrust Immunity Does Not Apply to AHAI .................................................. 14

IV.  The Reapers properly State a Claim for Sherman Act Section I Violations ........................ 16

    A.   Inapplicable Law and Misleading Assertions ................................................ 16

    B.   The NCAA framework Established in Board of Regents Does Not and Has Never Been Applied to Defendants or Defendants' Conduct .................................................... 18

    C.   The Governing Pleading Standard ................................................................ 19

    D.   The FAC Adequately Alleges Relevant Market .............................................. 21

    E.   The FAC Adequately Alleges Market Power ................................................. 22

    F.   The FAC Satifies Twombly ......................................................................... 24

V.   The Reapers Properly States a Claim for Sherman Act Section 2 Violations ..................... 27

VI.  The Reapers Properly States a Claim for Violation of the Illinois Consumer Fraud Act ..... 28

VII. AHAI Failed to Respond to Plaintiff's Declaratory Judgment Claim In Count IV ............. 31

VIII. The Club Defendants' Motion to Dismiss Should be Denied. ......................................... 32

    A.   Count I States an Antitrust Claim under Section I of the Sherman Act against the Club Defendants. ........................................................................................................ 32

    B.   Count III and IV State Claims for Declaratory Relief against the Club Defendants. ....... 34

i

## TABLE OF AUTHORITIES

**Cases**

*A.J. Maggio Co. v. Willis* ............................................................................................................... 8

*Agnew v NCAA* .................................................................................................................... 18, 19

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.* ................................................................ 11, 23

*Am. Nat. Tr. Co. of Chicago v. Kentucky Fried Chicken of S. California, Inc.* ............................... 8

*Am. Needle, Inc. v. Nat'l Football League* .................................................................................. 16

*Amateur Softball Ass'n of America v. United States* .................................................................... 23

*Ashcroft v. Iqbal* ........................................................................................................................... 4

*Aspen Skiing Co.* .......................................................................................................................... 27

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ..................... 10, 36

*Behagen v. Amateur Basketball Ass'n of the U.S.* ....................................................................... 14

*Bell Atl. Corp. v. Twombly* ...................................................................................................... 4, 24

*Bell Atlantic Corp. v. Twombly* ...................................................................................... 25, 29, 32

*Bloyer v. St. Clair Cty. Illinois* .................................................................................................... 27

*Board of Regents v. NCAA* ................................................................................................ 2, 18, 19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.* ...................................................................... 10, 36

*Bunker Ramo Corp. v. United Bus. Forms, Inc.* .......................................................................... 19

*Cascade Health Sols. v. PeaceHealth* .......................................................................................... 28

*Chicago-Midwest Meat Ass'n v. City of Evanston* ......................................................................... 5

*Cmty. Bank of Greater Peoria v. Carter* ....................................................................................... 8

*Daniel* .......................................................................................................................................... 13

*Daniel v. Am. Bd. of Emergency Medicine* .................................................................................. 13

*Denny's Marina, Inc. v. Renfro Prods., Inc.* ............................................................................... 19

*DMJ Assocs., L.L.C. v. Capasso* ................................................................................................... 7

*Domanus v. Locke Lord LLP*, 847 F.3d 469, 478 (7th Cir. 2017) ................................................ 4

*Double D Sporting Serv., Inc. v. Supervalu, Inc.* ........................................................................ 19

*Eleven Line Inc. v. North Texas State Soccer Ass'n,* .................................................................... 14

*Erickson v. Pardus* ...................................................................................................................... 24

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.* .................................................................. 24, 25

*F.T.C. v. Phoebe Putney Health Sys., Inc.* .................................................................................. 14

*Fed. Ins. Co. v. Parello* ................................................................................................................. 8

*Fishman v. Estate of Wirtz* ..................................................................................................... 26, 27

*Forgue v. City of Chicago* .............................................................................................................. 4

*Fortner Enterprises, Inc. v. United States Steel Corp.* ................................................................ 22

*Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr* ....................................................... 13

*FTC v. Indiana Fed'n of Dentists* ................................................................................................ 23

*Gold Medal LLC v. USA Track & Field* ...................................................................................... 14

*Goldstein v. Gardner* ..................................................................................................................... 7

*Group Life & Health Ins. Co. v. Royal Drug Co.* ....................................................................... 14

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.* .............................................. 27

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 11-cv-268, 2013 WL
    3214983, at *7 (N.D. Ind. Mar. 13, 2013) ............................................................................ 27

*Hammes* .................................................................................................................................. 12, 13

*Havens Realty Corp. v. Coleman* ................................................................................................... 5

*Havoco of Am., Ltd. v. Shell Oil Co.* .................................................................................. 21
*Hollywood Blvd. Cinema, LLC v. FPC Funding II, LLC* ...................................................... 9
*Illinois v. City of Chicago* ................................................................................................ 31
*In re Baby Food Antitrust Litig.* ...................................................................................... 16
*In re Dealer Mgmt. Sys. Antitrust Litig.* ........................................................... 5, 16, 20, 21
*In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 965 (N.D. Ill. 2018) ....... 17, 20, 27
*In re Estate of Wernick* .................................................................................................... 35
*In re Plasma-Derivative Protein Therapies Antitrust Litig.* ................................................ 5
*In re Text Messaging Antitrust Litig.* ................................................................. 4, 32, 33, 34
*Ind. Fed'n of Dentists* ...................................................................................................... 23
*Int'l Equip. Trading, Ltd. v. Illumina, Inc.* ...................................................................... 21
*Iqbal* .................................................................................................................................. 4
*Jackson v. Payday Fin.* ..................................................................................................... 30
*Jamsports & Entm't, LLC. v. Paradama Prods.*, Inc. ....................................................... 28
*JES Props., Inc. v. USA Equestrian, Inc.* .......................................................................... 14
*John Wiley & Sons, Inc. v. DRK Photo* ............................................................................... 8
*Johnson Controls World Servs., Inc. v. United States* .......................................................... 8
*Kleen Prod., LLC v. Packaging Corp. of Am.* .................................................................... 24
*Law v. NCAA* .................................................................................................................... 16
*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.* ........................................................... 21
*Lujan v. Defenders of Wildlife* ........................................................................................... 5
mark and is cited in a highly misleading fashion. As the comparison below reveals, the 7th
    Circuit's holding and reasoning in *Hammes v. AAMCO Transmissions* ............................... 12
*Matter of Estate of Martinek* .............................................................................................. 8
*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.* .............................................. 25, 34
*McWane, Inc. v. F.T.C.* ...................................................................................................... 28
*Minn-Chim, Inc. v Agrium, Inc.* ........................................................................................ 21
*National Bank of Albany Park in Chicago v. Newberg* ......................................................... 9
*NCAA v. Board of Regents of Univ. of Okla.* ..................................................................... 23
*Newman v. Metro. Life Ins. Co.* ........................................................................................ 30
*Northwest Wholesale Stationers, Inc. v. Pac. Stationary and Printing Co.* ....................... 27
*Nucap Indus., Inc. v. Robert Bosch LLC* ........................................................................... 16
*Omnicare* .......................................................................................................................... 20
*Parmelee Transp. Co. v. Keeshin* ...................................................................................... 16
*Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Adver. Ass'n, Inc.* ......... 20
*Ploss v. Kraft Foos Corp., Inc.* ......................................................................................... 21
*PRA III, LLC v. Hund* ........................................................................................................ 8
*Pyour B.V. v. Ingredion, Inc.* ............................................................................................ 16
*Republic Tobacco Co. v. N. Atl. Trading Co.* ..................................................................... 16
*Right Field Rooftops LLC v. Chi. Baseball Holdings, LLC* ................................................ 21
*Robinson* .......................................................................................................................... 29
*Robinson v. Toyota Motor Credit Corp.* ................................................................. 28, 29, 30
*Saltzberg v. Fishman* .......................................................................................................... 8
*SD3, LLC v. Black & Decker (U.S.) Inc.* ........................................................................... 16
*Shelton v. Rutherford Cty., Tennessee* ................................................................................. 9
*Sheridan v. Marathon Petroleum Co.* ................................................................................ 22

*Spirit Airlines, Inc. v. Nw. Airlines, Inc.* ................................................................................ 28
*Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v. NCAA* ................. 16
*Stamatakis Indus, Inc. v. King* ............................................................................................... 10
*State Oil Co. v. Khan* ............................................................................................................ 16
*Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.* .................................................. 10
*Tamayo v. Blagojevich* ......................................................................................................... 29
*Technicon Med. Info. Sys. Corp. v. Green Bay Packaging Inc.* ............................................ 12
*Tichy v. Hyatt Hotels Corp.* .................................................................................................. 10
*Todd v. Exxon Corp.* ............................................................................................................ 21
*Tondas v. Amateur Hockey Ass'n of U.S.* .............................................................................. 23
*Tuhey v. Illinois Tool Works, Inc.* ....................................................................................... 16
*Twombly* .................................................................................................................................. 4
*TYR Sport Inc. v. Warnaco Swimwear Inc.* .......................................................................... 15
*Underwriters Labs., Inc. v. Solarcom LLC* ........................................................................... 30
*United States v. Beaver*, 515 F.3d 730, 738 (7th Cir. 2008) ................................................. 25
*United States v. E.I. du Pont de Nemours & Co.* ................................................................... 22
*United States v. General Motors Corp.* ................................................................................. 25
*United States v. Grinnell Corp.* ............................................................................................. 27
*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP* .......................................... 28
*Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.* .......................... 11, 36
*Ward v. Gamble* ................................................................................................................ 8, 10
*Watkins v. Smith* ................................................................................................................... 20
*Wendorf v. Landers* .............................................................................................................. 34
*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.* ..................... 28, 29, 30
*ZF Meritor, LLC v. Eaton Corp.* .......................................................................................... 28

**Statutes**

15 U.S.C. § 45 ........................................................................................................................ 29
15 U.S.C. §1 ............................................................................................................................. 2
28 U.S.C. § 2201 .................................................................................................................... 31
36 U.S.C. §§ 220501, et seq. .................................................................................................. 14
735 ILCS 5/2-209.1 .................................................................................................................. 5
735 ILCS 5/2-403(a) ................................................................................................................. 8
815 ILCS §§ 505/1 .................................................................................................................. 34

**Other Authorities**

3 Ill. Law and Prac. Assignments § 1 ....................................................................................... 9
3 Ill. Law and Prac. Assignments § 11. ..................................................................................... 8
3 Ill. Law and Prac. Assignments § 27 ...................................................................................... 9
3 Ill. Law and Prac. Assignments §§ 1, 28 ............................................................................. 8, 9

**Introduction**

Defendants' Motions to Dismiss the First Amended Complaint ("FAC") are predicted on severe misstatements of the FAC, inapplicable legal standards and a penchant for setting up and striking down straw man arguments. When the Court properly examines the claims as alleged against the governing pleading standards in this Circuit, there can be no dispute that the FAC states four valid causes of action.

This case alleges conduct by AHAI, in collusion with the existing four Tier I hockey clubs (Club Defendants), to enact and maintain a horizontal restraint of trade, embodied in Rule 16.3.3, to restrict supply of additional Tier I hockey clubs so that the Club Defendants can be insulated from competition and so as to enrich its enablers at the direct expense of participating families. This case alleges conduct by the Defendants that violates federal and state law.

This case alleges conduct by AHAI that contravenes and is antithetical to the very mission of USA Hockey, the National Governing Board ("NGB") of amateur hockey in the United States:

- USAH's mission includes "supporting the growth of the sport and all its participants and enthusiasts" by "enabling the widest possible access to the game, ensuring the growth of all participating member categories" and ensuring the progressive development of all player (USAH 2018-19 Annual Guide at 5) (FAC ¶ 48).

Against this backdrop, Defendants file their Motions to Dismiss, using a shot gun approach, in the hopes of delaying or derailing this meritorious case. That approach fails.

Defendant AHAI's Motion should be denied for the following six, independent reasons:

First, The Reapers has Article III Standing. The Reapers Association's right to sue AHAI, along with any and all other rights, privileges, property and legal claims it may have possessed, passed to The Reapers Inc. by operation of law upon its incorporation. The attached Declaration of Steven Dry fully supports The Reapers Inc.'s standing to bring this lawsuit.

Second, The Reapers has properly pled antitrust injury. The Reapers has satisfied the

antitrust injury requirement for its two Sherman Act claims by pleading that the claimed injuries are of the type the antitrust laws were intended to prevent (FAC ¶ 5) and reflect the anticompetitive effect of the violation (FAC ¶ 7).

Third, implied antitrust immunity does not apply to AHAI. No court has ever extended implied immunity to a local amateur governing board, such as AHAI. In fact, the two courts that have squarely faced this issue have refused to find implied immunity.

Fourth, The Reapers properly state a claim for Sherman Act Section 1 violations. The Reapers allege that AHAI, in collusion with the Club Defendants, implemented and enforced an unreasonable restraint of trade in violation of 15 U.S.C. §1. The Reapers properly allege all necessary elements under the Seventh Circuit governing standards. AHAI argues throughout its challenges to The Reapers antitrust claims that AHAI is a "sports league" and all sports leagues are governed by the antitrust pleading standards that govern cases challenging rules enacted by the NCAA. They further contend that under that every "sports league" imposes rules and that certain challenged rules may be "presumptively pro-competitive". (Mot. at pgs. 1, 12).

Defendants are flat wrong. As will be demonstrated *infra*, there is no established legal framework governing all antitrust cases involving sports leagues. There is, however, a legal framework established by the Supreme Court in *Board of Regents v. NCAA*, 468 U.S. 85 (1984)) for specifically assessing conduct by the NCAA, but that framework, including the notion of a presumptively procompetitive rule, does not, and has never been, applied to a local amateur governing body, such as AHAI. Rather, this case is governed by established Seventh Circuit law, and under the proper standard, the FAC satisfies all necessary pleading requirements.

Fifth, The Reapers properly states a claim for Sherman Act 2 violations. AHAI's arguments to the contrary are specious and fail especially at the pleading stage.

2

Sixth, The Reapers properly states a claim for violation of the Illinois Consumer Fraud Act ("ICFA"). The Reapers adequately allege that Defendants' actions, described in the FAC, constitute unfair conduct under the ICFA.

Finally, the Club Defendants' Motion should be denied in its entirety because Count I plainly states an antitrust claim under Section 1 of the Sherman Act against the Club Defendants and Counts III and IV plead valid claims as well.

## Factual Background

In the face of growing demand for amateur youth hockey, (FAC ¶¶ 43-46,) opportunities to play at the highest Tier I level in Illinois are restricted by AHAI's adoption of its Rule 16.3.3, in stark contrast to the rest of the country. (FAC ¶¶ 46, 53.) The addition of the Four Club Restraint did not serve the needs of USAH, AHAI's mission, or the thousands of youth hockey players in the State of Illinois. (FAC ¶ 54.) The adoption of the Four Club Restraint by AHAI served to restrict supply as a way to enhance market power, protect the four chartered Tier I clubs from competition, and force players and families to pay artificially inflated prices to join one of those clubs to secure prime playing opportunities. (*Id.*)

AHAI took no action on the Reapers' application for a charter to sponsor a Tier I club because it decided not to rescind the Four Club Restraint (FAC ¶ 100.) The FAC fully describes that AHAI entered into a conspiracy with the Club Defendants. Among other things, the Complaint describes: (i) a distinct group of specific individuals and the entities they represented, (FAC ¶ 51); (ii) who control 100% or virtually 100% of the market, (FAC ¶ 42); (iii) who reached an agreement to limit competition, (FAC ¶ 53); (iv) an approximate time period when the agreement was reached, (FAC ¶¶ 50-51); (v) the manner in which the individuals codified their agreement (by majority vote enacting the Four Club Restraint), (FAC ¶ 53); (vi) their motivation for participating in the conspiracy, (FAC ¶ 53); (vii) specific acts these and other individuals later took against the

3

Reapers and in furtherance of the conspiracy, (FAC ¶¶ 58-65, 69-74, 78, 82-83, 94-114); and (viii) the negative effects of the conspirators' restraint of trade on competition in the Relevant Market, as measured by denial of services in a specific geographic area, artificially inflated prices, and artificially restricted player choice, (FAC ¶¶ 54-57).[1]

### Legal Standard

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement need not include "detailed factual allegations" but must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007 (quotations omitted). When evaluating a complaint's sufficiency, all allegations of material fact are taken as true and are construed in the light most favorable to the plaintiff. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). *See also Domanus v. Locke Lord LLP*, 847 F.3d 469, 478 (7th Cir. 2017).

To survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 556). *See also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010). It is inappropriate at the motion-to-dismiss stage to determine whether a lawful alternative explanation appears more likely from the facts of the complaint. *In re Plasma-Derivative Protein*

---

[1] Additional facts and factual disputes are discussed in the remainder of the brief. The Reapers also respectfully refers the Court to the recitation of facts contained in its Motion for Preliminary Injunction (Dkt. 7.)

*Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1002 (N.D. Ill. 2011). *See also In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 CV 864, 2018 WL 2193236, at *13 (N.D. Ill. May 14, 2018) (rejecting defendants' argument because it would have "require[d] the Court to … credit an inference in Defendants' favor . . . over a contrary one in [plaintiff's] favor").

**Argument**

**I.      The Reapers has Article III Standing**

As The Reapers explained preliminarily in prior briefing, (*See* Dkt. 22, at 2-3, Dkt. 49, at 2-4), Reapers Hockey Association, Inc. ("Reapers Inc.")[2] has Article III standing to pursue the claims in the First Amended Complaint ("FAC") by virtue of, among other things, its statutory status as the successor in interest to The Reapers Tier I Hockey Association ("Reapers Association"). Article III standing requires (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Reapers Association, an unincorporated association, plainly had Article III standing to assert its own rights as well as the associational rights of its members. *See* 735 ILCS 5/2-209.1 ("A voluntary unincorporated association may sue and be sued in its own name"); *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); *Chicago-Midwest Meat Ass'n v. City of Evanston*, 589 F.2d 278, 280-281 (7th Cir. 1978). Moreover, as the subject of the application, it had a recognizable interest in the dispute peculiar to itself, there was a causal connection between its injury and AHAI's alleged conduct, and its injury was and is redressable, because a favorable decision would award a charter (or the right to compete for a charter) to its successor-in-interest. (*See* FAC ¶ 80.)

---

[2] For clarity, within this brief, "Reapers Association" refers to The Reapers Tier I Hockey Association; "Reapers Inc." refers to Reapers Hockey Association, Inc., the successor-in-interest to Reapers Association; and "Reapers" refers generally to the ongoing entity comprising both Reapers Association (as predecessor-in-interest) and Reapers Inc. (as successor-in-interest).

5

At all relevant times, the parties have understood that in order to hold a charter, Reapers Association had to incorporate. (Ex.1, Dry Decl. ¶4) Doing so is a requirement for any entity to hold a charter to sponsor a Tier I club. (*See* AHAI Rule 19.7.2, Gebhardt Decl., Ex. A.) Indeed, Reapers Association bylaws, which it submitted to AHAI in connection with its application, expressly referenced its future incorporation: "The by-laws *or Articles of Incorporation* of the Association may be amended by the Board of Directors…" (*See* Dry Decl., Ex. A.)

Reapers Association was an unincorporated association formed in or around July 2018 by Steven Dry, Kevin Kroeger, Michael Motew, Jeanine Goldstein, Melissa Rotunno, and Dean Manone, for the purpose of seeking a charter from AHAI to sponsor a Tier I amateur youth hockey club. (Dry Decl. ¶2) Steven Dry was its President. (FAC ¶¶ 69, 79.) Reapers Hockey Association, Inc., ("Reapers Inc.") is an Illinois Not For Profit Corporation incorporated on January 14, 2019 (File No. 72163052). (Dry Decl. ¶12) It was intended to be, and is, the successor-in-interest to Reapers Association. (*Id.* at ¶11) Its current board members are Steven Dry, Kevin Kroeger, Michael Motew, Jeanine Goldstein, Melissa Rotunno, and Dean Manone—precisely the same individuals. (*Id.* at ¶12) Steven Dry remains as its President. (*See* Dkt. 7-2, at ¶ 2.)

On or around January 9, 2019 (prior to incorporation), Reapers Association hired counsel to advise its Board what, if anything, to do with respect to Reapers Association's business structure. (Dry Decl. ¶8) Reapers Association wanted to ensure that its corporate entity would be up and running in the event that it received a charter (in compliance with AHAI Rule 19.7.2), and wanted to ensure that all of its rights, privileges, property, and legal claims, including claims against AHAI and the Club Defendants with regard to the application process, were preserved and transferred to its new corporate form, Reapers Inc. Reapers Association advised counsel to that effect. (*Id.)* On January 10, 2019, AHAI informed Reapers Association via email that it had

6

decided not to rescind the Four Club Restraint and would not consider Reapers Association's application. (*Id.* at ¶9)

On January 11, 2019 (still prior to incorporation), Reapers Association properly convened a meeting of its Board of Directors to discuss, among other things, AHAI's refusal to consider its application to sponsor a Tier I club. (*Id.* at ¶11) In the course of that properly noticed meeting, Reapers Association and its Board of Directors agreed that all rights, privileges, property, and legal claims of Reapers Association would succeed to Reapers Inc. (*Id.*) The Board voted unanimously to that effect, in accordance with Reapers Association's bylaws. (*Id.*) Counsel for Reapers Association subsequently implemented the Board's instructions and incorporated the organization.

There are at least four independent bases to find that Reapers Inc. has Article III standing to bring these claims. **First**, under Illinois statutory law, The Reapers Association's act of incorporating, with the intention of transferring all rights, privileges, and property to Reapers Inc., transferred its right to sue to Reapers Inc. by operation of law. 805 Ill. Comp. Stat. Ann. 105/102.35(b) (Incorporation of an association or society) ("Upon incorporation, all the rights, privileges, immunities, powers, franchise, authority, and property of the unincorporated association or society shall pass to and vest in the corporation, and all obligations of the unincorporated association or society shall become obligations of the corporation.").

**Second**, Reapers Association's incorporation also effectively transferred its right to sue Defendants in this litigation by operation of law under the common law of Illinois. *See, e.g.*, *Goldstein v. Gardner*, 444 F. Supp. 581, 582 (N.D. Ill. 1978) (applying successor by merger doctrine); *DMJ Assocs., L.L.C. v. Capasso*, No. 97-CV-7285, 2016 WL 11505056, at *3 (E.D.N.Y. Oct. 31, 2016) (transfers by operation of law occur "where in essence [the party] continues with the same entity, but in a different form."); *Ward v. Gamble*, No. CV085017829S, 2009 WL

7

2781541, at *5 (Conn. Super. Ct. July 23, 2009); *Johnson Controls World Servs., Inc. v. United States*, 44 Fed. Cl. 334, 344 (1999).

**Third**, the same facts support a valid and effective transfer of rights under the theory of legal assignment. Assignments "establish a relationship between the parties in which the assignor is the predecessor-in-interest, and the assignee is the successor-in-interest," *Am. Nat. Tr. Co. of Chicago v. Kentucky Fried Chicken of S. California, Inc.*, 719 N.E.2d 201, 210 (Ill. App. 1st Dist. 1999), and accordingly, they "operate to transfer to the assignee all of the assignor's right, title, or interest in the thing assigned, resulting in the assignee standing in the shoes of the assignor." *PRA III, LLC v. Hund*, 846 N.E.2d 965 (Ill. App. 3d Dist. 2006); *see also* 735 ILCS 5/2-403(a); 3 Ill. Law and Prac. Assignments §§ 1, 28. A chose in action is considered personal property and is assignable, *Saltzberg v. Fishman*, 462 N.E.2d 901, 905 (Ill. App. 1st Dist. 1984), and it is "well established" that the right to sue on an antitrust claim is freely assignable. *Fed. Ins. Co. v. Parello*, 767 F. Supp. 157, 163 (N.D. Ill. 1991); *see also John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 417 (2d Cir. 2018).

An effective assignment requires: (1) that the assignor actually possess the right to be assigned; (2) a clear manifestation of an intent to assign; and (3) the subject of the assignment must be sufficiently identified. *A.J. Maggio Co. v. Willis*, 738 N.E.2d 592, 596 (Ill. App. 1st Dist. 2000); *Cmty. Bank of Greater Peoria v. Carter*, 669 N.E.2d 1317, 1319 (Ill. App. 1st Dist. 1996); 3 Ill. Law and Prac. Assignments § 11. (Dry Decl. ¶11) All of those conditions are satisfied here. No particular form of words is necessary to create a valid assignment, *Cmty. Bank of Greater Peoria v. Carter*, 669 N.E.2d 1317, 1319 (Ill. App. 1st Dist. 1996); *Matter of Estate of Martinek*, 488 N.E.2d 1332, 1337 (Ill. App. 2d Dist. 1986), and an assignment can be oral or written. *Hollywood Blvd. Cinema, LLC v. FPC Funding II, LLC*, 23 N.E.3d 381 (Ill. App. 2d Dist. 2014); 3 Ill. Law

8

and Prac. Assignments § 1.

**Fourth**, even if an assignment is deemed legally ineffective, "equity will recognize and protect" the rights of an assignee under the doctrine of equitable assignment. 3 Ill. Law and Prac. Assignments § 1 (citing *National Bank of Albany Park in Chicago v. Newberg*, 289 N.E.2d 197, 202 (Ill. App. 1st Dist. 1972)); 3 Ill. Law and Prac. Assignments § 27 (collecting cases). For all of these reasons, for all purposes relevant to this litigation, Reapers Inc. stands in the shoes of Reapers Association and effectively *is* Reapers Association.

In its Motion, (Dkt. 40), AHAI argues its refusal to consider the application could not have injured *Reapers Inc.* because "it did not exist when the events underlying this dispute occurred, and thus suffered no injury as a result of AHAI's alleged conduct." (*Id. at 5*) AHAI cites no authority in support of that argument, which is incorrect. AHAI's criticism on this point rings particularly hollow given that the only reason Reapers Association was not incorporated before submitting an application is that AHAI, through Mike Mullally, instructed Steve Dry that he should *wait to incorporate until "after the approval*." (*See* Dkt. 22-2, July 1, 2018 Email from Mullally to Dry; Dkt. 22, at 2-3, Dkt. 49, at 2-4; Dry Declaration, ¶¶ 2-6.) AHAI cites *no authority whatsoever* in support of its argument that an incorporated entity can't possess standing to recover for an injury to its predecessor voluntary association because the incorporated entity didn't yet exist at the time its predecessor was injured. Courts have rejected and should reject standing challenges that, like AHAI's, are simply based on the argument that an entity's incorporation post-dates the filing of the complaint. *See, e.g., Shelton v. Rutherford Cty., Tennessee*, No. CIV. A. 09-CV-0318, 2009 WL 2929394, at *5 (M.D. Tenn. Sept. 8, 2009) (rejecting Defendant's argument that Plaintiff limited liability company lacked standing because it "did not exist as a legal entity at the time its claims arose"); *Ward*, 2009 WL 2781541, at *5.

9

AHAI argues that it has "the right to litigate against the party who actually suffered the alleged injury." That party is here, and AHAI is doing so right now. To the extent the Court is concerned that AHAI could face duplicative litigation from Reapers Association, Mr. Dry's declaration makes clear that unless the Court finds that Reapers Inc. somehow lacks standing, Reapers Association has no intention of filing suit against AHAI.[3] (Dry Decl. ¶13)

## II.     The Reapers Properly Pled Antitrust Injury For Its Sherman Act Claims[4]

To satisfy the antitrust injury requirement at the pleading stage, Plaintiff need only allege that its "claimed injuries are 'of the type the antitrust laws were intended to prevent' and 'reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). This is exactly what Reapers Inc. has done. *See, e.g.*, FAC ¶¶ 5, 121, 125-126, 130-131, 149 (Defendants likewise harmed Reapers by, among other things, barring their market entry, causing significant delays, missed recruiting, hiring, training, leasing, and other opportunities, and otherwise preventing them from forming teams for the 2019-2020 season); FAC ¶¶ 5, 120, 125-126, 130-131 (Defendants harmed competition by limiting supply, by eliminating supply to a specific geographic area, by artificially and substantially inflating prices, and by limiting consumer choice). These are fundamental antitrust injuries. *See, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983) (the Sherman Act "was enacted to assure customers the benefits of price competition"); *Stamatakis Indus, Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992) ("The antitrust injury doctrine … requires every plaintiff to show that its loss

---

[3] To the extent the Court believes that Reapers Inc. is not the real party in interest to assert these claims, Reapers Inc. should be permitted to amend the FAC pursuant to Rule 17(a).

[4] The Seventh Circuit has explained that "antitrust standing" refers not to Constitutional standing, but rather to proximate causation. In *Supreme Auto Transport, LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018); *see also Tichy v. Hyatt Hotels Corp.*, No. 18 C 1959, 2019 WL 1318674, at *14 (N.D. Ill. Mar. 22, 2019) (Pallmeyer, J.).

comes from acts that reduce output or raise prices to consumers."); *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 129 F. Supp. 3d 614, 638 (N.D. Ill. 2015) (exclusivity agreement that "effectively preclud[ed]" Plaintiff from competing plausibly alleged antitrust injury); *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 900 (N.D. Ill. 2009) (competitor's allegation that Defendants' actions "had an effect on its ability to compete in the market" stated plausible claim).

The Reapers further allege that:

- AHAI has abandoned and now works contrary to its stated mission and to the stated mission of USAH, FAC ¶¶ 1, 2, 47-50;

- the purpose of the Four Club Restraint, which Reapers seek to abolish, is to insulate existing clubs from competition, to ensure no new club can enter the market, and to create excess profit that can be skimmed off by the Club Defendants, FAC ¶¶ 2, 51, 54;

- AHAI should allow a "market-driven number of Tier I clubs," FAC ¶ 55;

- rescinding the Four Club Restraint would eliminate the need for players and families to pay artificially inflated prices, FAC ¶ 68;

- Reapers would help to "meet this [artificially reduced] market demand," FAC ¶ 69; and

- Reapers seek to charge materially lower prices than the artificially inflated prices charged by the Four Club Defendants—by at least 25 percent, FAC ¶¶ 116, 120.

As for relief, The Reapers seek a charter only *after* the Court bars enforcement of, and orders AHAI to rescind, the illegal Four Club Restraint. FAC ¶¶ 10, 11, and Prayers for Relief. The Reapers request *secondary, alternative relief* in the form of an order that AHAI must "adopt and implement an objectively fair, unbiased, and transparent process for annually weighing the relative merits of each club's application and determining the four clubs that will receive a charter each year." FAC, Prayers for Relief for Counts I and II. But The Reapers request this relief only "[i]n the event the Court declines to order AHAI to rescind the Four Club Restraint." (*Id.*)

AHAI sets forth a straw man argument that the FAC "does not assert a cognizable injury under the Sherman Act." (Dkt. 40, at 7.) The only basis AHAI puts forward for this argument is its assertion that The Reapers "seek to join [Defendants'] anticompetitive arrangement as a fifth participant, (*id.* at 8), and that "it is suing because it wants to charge allegedly supracompetitive prices … in a restricted market, too." (*Id.* at 9.) These assertions are false and grossly misrepresent The Reapers' allegations of injury and Prayers for Relief. There is nothing improper about the assertion of alternative theories of legal rights. *Technicon Med. Info. Sys. Corp. v. Green Bay Packaging Inc.*, 687 F.2d 1032, 1039 (7th Cir. 1982); Fed. R. Civ. Proc. 8(e)(2). Only the most twisted reading of the FAC suggests it is an attempt to join in Defendants' illegal activity.

The case law cited by AHAI is wide of the mark and is cited in a highly misleading fashion. As the comparison below reveals, the 7th Circuit's holding and reasoning in *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 779 (7th Cir. 1994) actually **supports** The Reapers' position, not AHAI's. The snippet of the opinion cited by AHAI (Dkt. 40 at 8) is incomplete and misleading. *Hammes* involved an auto repair shop's claim that it was blocked from participating in a customer referral pool that included its fellow franchisees. Judge Posner wrote for a unanimous panel:

| *Hammes*: Passage Cited by AHAI | *Hammes*: Passage in Full |
|---|---|
| "antitrust laws seek to prevent rather than to protect cartel profits; it would be a strange perversion to make antitrust law the vehicle for the enforcement of illegal anticompetitive agreements." <br><br> *Hammes*, 33 F.3d at 782. | "If the complaint showed that Cooksey's only gripe was that it had been expelled from a cartel and thereby deprived of cartel profits, it could not recover those lost profits as antitrust damages. The antitrust laws seek to prevent rather than to protect cartel profits; it would be a strange perversion to make antitrust law the vehicle for the enforcement of illegal anticompetitive agreements. ***That Cooksey is seeking lost cartel profits is only one possible interpretation of the complaint, however, and any ambiguities must be left to further proceedings to resolve. Another interpretation is that Cooksey wanted to compete by underselling the other dealers, thus weakening or breaking the cartel, and*** |

12

| | *that it was ejected from the advertising pool in order to prevent it from, or punish it for, doing this. Losses inflicted by a cartel in retaliation for an attempt by one member to compete with the others are certainly compensable under the antitrust laws, for otherwise an effective deterrent to successful cartelization would be eliminated; and it is premature to conclude that this is not the character of the loss that Cooksey seeks to recover*." |
| --- | --- |
| | *Hammes*, 33 F.3d at 782-83. (internal cites omitted). |

AHAI repeats this maneuver with the *Daniel* case, *Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005), quoting self-serving dicta from the dissent[5] and passing it off as the substantive holding of the majority in a case involving summary judgment, not Rule 12(b)(6). This case involved a Plaintiff that merely sought a share of the monetary fruits of the monopoly and did not ask for the alleged restraint to be rescinded. Yet AHAI cites a portion of the dissent's statement that "[P]laintiffs cannot themselves state an antitrust injury when their purpose is to join the cartel rather than disband it," while omitting the punch line: "If, however, a cartel-member plaintiff seeks to remove the restraint so he may be free to compete—such that the member's interest coincides with the public interest in vigorous competition—*he satisfies the antitrust injury requirement.*" *Daniel*, 428 F.3d at 440 (Katzmann, J., dissenting) (emphasis added). The difference between *Daniel* and this case is apparent—the Plaintiffs in *Daniel* claimed they were entitled to a share of the monetary fruits of the monopoly; The Reapers seek to restore competition, remove AHAI's barriers to entry, and charge lower prices.[6]

---

[5] Judge Katzmann concurred in part and dissented in part with the majority opinion. With respect to antitrust injury, Judge Katzmann dissented. *Daniel*, 428 F.3d at 445 (Katzmann, J., concurring in part and dissenting in part).

[6] AHAI's reliance on *Four Corners Nephrology* is also misplaced. *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr*, 582 F.3d 1216 (10th Cir. 2009) is a summary judgment opinion and does not shed light on pleading sufficiency. That case involved a doctor's Section 2 claim against a hospital for refusing to grant him active medical staff privileges. 582 F.3d at 1225-26. With respect to his alleged injury, he asked the court only to award him monetary damages and an order granting him those privileges, but he did not ask the court "to prevent a monopoly or break one

### III.    Implied Antitrust Immunity Does Not Apply to AHAI

AHAI argues that its actions are impliedly immune from judicial oversight under the antitrust laws, pursuant to the Amateur Sports Act of 1978, 36 U.S.C. §§ 220501, et seq. (the "ASA"). This argument is meritless.

The ASA contains no express grant of immunity for amateur sport NGBs such as USAH, much less for local affiliates of NGBs that are even further removed from Congressional or U.S. Olympic Committee ("USOC") oversight. Repeals of the antitrust laws by implication are strongly disfavored. *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013); *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 231 (1979). Neither the U.S. Supreme Court, nor the Seventh Circuit, have ever held that NGBs enjoy express or implied immunity under the ASA.

The Ninth, Tenth, and Eleventh Circuits have held that certain NGBs—the sister entities of USAH, not of AHAI—are entitled to implied immunity from the antitrust laws. *Behagen v. Amateur Basketball Ass'n of the U.S.*, 884 F.2d 524 (10th Cir. 1989); *JES Props., Inc. v. USA Equestrian, Inc.*, 458 F.3d 1224 (11th Cir. 2006); *Gold Medal LLC v. USA Track & Field*, 899 F.3d 716 (9th Cir. 2018). But it is clear, even from these holdings, that the "application of implied antitrust immunity [under the ASA] is not limitless." *Gold Medal LLC*, 899 F.3d at 718 (citing favorably *Eleven Line Inc. v. North Texas State Soccer Ass'n*, 213 F.3d 198 (5th Cir. 2000)). Indeed, the limits of implied antitrust immunity under the ASA are clear in that none of these cases involve local affiliates of NGBs, like AHAI, as opposed to NGBs themselves, like USAH.

AHAI is not an NGB under the ASA, and nothing in that law suggests Congress intended to immunize state-level affiliates who are several degrees of separation removed from USOC oversight, not to mention Congressional oversight. Quite the contrary, the only courts to have

---

apart" by reforming the process for granting privileges. That is a far cry from the relief The Reapers seek for the antitrust injury it alleges.

considered the question of implied immunity under the ASA for a local affiliate of an NGB have correctly concluded that there is no basis for such immunity. *Eleven Line Inc. v. North Texas State Soccer Ass'n*, 213 F.3d 198 (5th Cir. 2000); *Minnesota Made Hockey, Inc. v. Minnesota Hockey, Inc.*, 789 F. Supp. 2d 1133, 1142 (D. Minn. 2011); *see also Gold Medal LLC*, 899 F.3d at 718 (citing favorably *Eleven Line Inc. v. North Texas State Soccer Ass'n*, 213 F.3d 198 (5th Cir. 2000)). There is no law within or outside of the Seventh Circuit that compels or supports a different conclusion here. Furthermore, there is no implied immunity under the ASA against alleged antitrust conspiracies where, as here, the plaintiff hasn't asserted an ASA violation. *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1133 (C.D. Cal. 2009). Finally, applying the Sherman Act to AHAI's conduct in this matter poses no conflict with the ASA because AHAI's alleged actions are antithetical to the very mission and bylaws of its NGB, USAH. (FAC ¶57)

AHAI argues that it should be granted implied immunity in this case because the Four Club Restraint has been approved by USAH. (Dkt. 40 at 26-27.) That is not only false, but is a bare factual assertion on the part of counsel.[7] There is no record evidence that USAH promulgated, expressly approved (or expressly approves) of the Four Club Restraint, and the FAC alleges to the contrary; that the Four Club Restraint violates the mission, bylaws, and rules of USAH and AHAI. (FAC ¶¶ 2, 5, 9, 57; *see also* FAC ¶ 57 (alleging no other local affiliate of USAH has implemented a comparable restraint)). The FAC also alleges that "The Reapers is not currently aware of any other state having adopted a Four Club Restraint or similar restraint." (FAC ¶ 57.) For all of these reasons, AHAI is not entitled to implied immunity under the ASA.

---

[7] In another factual assertion by counsel, AHAI asserts in support of its immunity argument that "it is the ASA that created USA Hockey…" That is incorrect. USA Hockey was founded in 1937. The ASA was signed into law in 1978. The ASA clearly did not "create" an entity that preceded it by more than 40 years.

15

**IV.     The Reapers properly State a Claim for Sherman Act Section I Violations**

AHAI's analysis of The Reapers' Sherman 1 claim is so far afield that it can almost be disregarded in its entirety. AHAI relies on a hodgepodge of summary judgment opinions (applying the wrong procedural standard), nonbinding (and irrelevant) case law from outside the 7th Circuit, counsel's own baseless factual assertions, and misrepresentations about The Reapers' allegations (applying the wrong facts and making up their own).

**A.     Inapplicable Law and Misleading Assertions**

As an initial matter, AHAI cites no less than eight summary judgment cases in its Sherman Act Section 1 argument.[8] That is nearly a quarter of all of its case citations in that section. These summary judgment cases do not support the notion that the FAC should be dismissed for failure to state a claim under Rule 12(b)(6) and should be disregarded. *See, e.g., Tuhey v. Illinois Tool Works, Inc.*, No. 17 C 3313, 2017 WL 3278941, at *5 (N.D. Ill. Aug. 2, 2017) (at motion to dismiss stage, declining to find persuasive cases on sufficiency of pleading retaliation liability that were decided at summary judgment stage); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 953 (N.D. Ill. 2018) ("courts must be careful not to import the summary-judgment standard into the motion-to-dismiss stage") (quoting *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015)); *Pyour B.V. v. Ingredion, Inc.*, No. 15-CV-8690, 2017 WL 9729695, at *2 (N.D. Ill. Feb. 22, 2017) (finding Defendant's argument that Plaintiff failed to plead enough facts to pierce corporate veil was not persuasive because it relied on Seventh Circuit summary judgment case law, not Rule 12(b)(6) case law). AHAI also relies on a variety of nonbinding case law from

---

[8] These include: *State Oil Co. v. Khan*, 522 U.S. 3, 118 S. Ct. 275, 139 L. Ed. 2d 199 (1997); *Law v. NCAA*, 134 F.3d 1010 (10th Cir. 1998); *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 130 S. Ct. 2201, 176 L. Ed. 2d 947 (2010); *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986 (N.D. Ill. 2017) (applying both Rule 12(b)(6) and summary judgment standards); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717 (7th Cir. 2004); *Parmelee Transp. Co. v. Keeshin*, 292 F.2d 794 (7th Cir. 1961); *Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v. NCAA*, 715 F.3d 1089 (8th Cir. 2013); and *In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999).

outside the Seventh Circuit which this Court need not follow (particularly to the extent those cases apply the incorrect summary judgment standard, conflict with binding Seventh Circuit precedent, incorrectly apply the Rule of Reason standard rather than the *per se* standard, or pertain to an irrelevant set of facts).

AHAI also takes extraordinary liberties with the facts, managing to both misrepresent The Reapers' allegations in the FAC and to insert their own, utterly baseless, factual allegations. Both of these tactics are improper and, at any rate, cannot help AHAI succeed in getting The Reapers' claims dismissed at this stage, when factual allegations must be resolved in Plaintiff's favor. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F.Supp. 3d 931, 938 (N.D. Ill. 2018) AHAI's baseless assertions are these:

- "league-size restrictions are universal features of organized sports" [Dkt. 40 at 11]

- "every sports governing body in the world … makes similar decisions" [Dkt. 40 at 11]

- The Four Club Restraint "is fundamental to the character of the product AHAI wishes to produce" [Dkt. 40 at 13]

- The Four Club Restraint "increas[es] the overall caliber and skill of Tier I hockey" [Dkt. 40 at 14]

- Adding a club to the Tier I level would "add a number of marginally less talented Tier I players" and would "reduce the quality of athletic competition being examined" [Dkt. 40 at 14]

- Adding a club would "reduce the athletic preparation that the best Tier I hockey players receive en route to Olympic trials and international competition." [Dkt. 40 at 14]

- The procompetitive benefits of the Four Club Restraint are "obvious"; it "creates a more competitive set of players able to excel at the collegiate and professional level"; "allows Illinois teams to remain competitive nationally"; "retains ample opportunities for players to compete" at Tier II & III [Dkt. 40 at 14]

- "competitive balancing is found across a wide spectrum of sports" [Dkt. 40 at 15]

17

- "concentrating elite talent within Tier I benefits the subdivision's players" [Dkt. 40 at 15]

- The existing Tier I players are "higher caliber" and players barred from Tier I by the Four Club Restraint are "inferior opponents" [Dkt. 40 at 15]

None of these assertions are supported with citations to proper record evidence. They are simply baseless factual arguments inserted by counsel, and the Court should give them no weight.

**B.      The NCAA framework Established in Board of Regents Does Not and Has Never Been Applied to Defendants or Defendants' Conduct**

Much of AHAI's argument for dismissal of The Reapers' Sherman Act claims rest on a completely false legal premise:  that the legal framework initially established in *NCAA v. Board of Regents*, 468 U.S. 85 (1984), along with the myriad of Seventh Circuit cases applying that holding to cases brought against the NCAA, applies to all antitrust cases involving sports and sports leagues.  (Mot. at 11-14, 23-24).  That is false. There is no Seventh Circuit cases applying the NCAA holdings to other "sports leagues" in general and AHAI has not cited a single case that does.  AHAI is seriously misreading the law and making arguments devoid of even a scintilla of legal support. A plain read of the NCAA line of cases make clear that the legal principles and reasoning applied to the specifics of the NCAA does not apply to other defendants.  Here, as detailed above, The Reapers claims are properly plead under governing Seventh Circuit precedent.

The Seventh Circuit's decision in *Agnew v NCAA*, 683 F3d. 328 (7th Cir. 2012), provides a detailed analysis of the Supreme Court's decision in *Board of Regents* and the interaction between the NCAA and the Sherman Act, why and how the Rule of Reason analysis applies to NCAA rules and bylaws and why those case holdings could never apply outside of the NCAA. For starters, the *Agnew* Court makes clear that the antitrust laws apply to the NCAA and that "The Sherman Act clearly applies to at least some of the NCAA's behavior". *Agnew* at 338.  *Board of Regents* explained that in the case of the NCAA, "horizontal restraints on competition are essential

if the product of [of collegiate sports] is to be available at all. " *Board of Regents* at 98-105. The *Agnew* Court further explained that the NCAA's collusive behavior is only permissible in some circumstances because "a certain degree of cooperation is necessary if the type of competition that [the NCAA] and its member institutions seek to market is preserved". *Agnew* at 342. The *Agnew* Court went on to explain that "Thus, the first—and possibly only—question to be answered when NCAA bylaws are challenged is whether or not the NCAA regulations at issue are of the type that have been blessed by the Supreme Court, making them presumptively procompetitive." *Agnew* at 341.

Here, the defendant is not the NCAA. There is no AHAI cited case that extends the unique *Board of Regents* analysis to any organization other than the NCAA. Youth amateur hockey in Illinois would be available without collusive behavior. Indeed, it was available prior to passage of the Four Club Restraint and is available in all other states without such a restraint. (FAC ¶57) The Supreme Court has not blessed the collusive behavior in this case, including the Four Club Restraint. Finally, other courts examining alleged antitrust violations by amateur governing boards have never analyzed or found the restraint in question to be presumptively procompetitive. *See Minnesota Made Hockey, Inc. v. Minnesota Hockey, Inc., et. al.*, 789 F. Supp. 2d 1133 (D. Minn. 2011. That is not and has never been the law.

## C. The Governing Pleading Standard

To state a Section 1 claim, a plaintiff need only plead facts plausibly suggesting: (1) a contract, combination, or conspiracy (meaning, an agreement); (2) a resulting unreasonable restraint of trade in a relevant market; and (3) an accompanying injury. *Denny's Marina, Inc. v. Renfro Prods., Inc.,* 8 F.3d 1217, 1220 (7th Cir. 1993); *Double D Sporting Serv., Inc. v. Supervalu, Inc.,* 136 F. 3d 554, 560 (8th Cir. 1998); *Bunker Ramo Corp. v. United Bus. Forms, Inc.*, 713 F.2d 1272, 1282 (7th Cir. 1983) ("In antitrust cases, dismissals prior to giving the plaintiff an

19

opportunity for discovery should be granted very sparingly."). Per se violations—those with which courts have "considerable experience" and "inevitably result[] in a finding of anticompetitive effect"—are presumed to be unreasonable restraints of trade. *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Adver. Ass'n, Inc.*, 672 F.2d 1280, 1284 (7th Cir. 1982); *see also, e.g., Omnicare*, 629 F.3d at 706 (an unreasonable restraint is "conclusively presumed once the first [element] is proved" in *per se* cases).

The FAC clearly presents sufficient allegations to state a claim for *per se* antitrust violations on the part of Defendants. The FAC alleges the existence of a naked restraint of trade designed to restrict output and bar competitors from entering the market. (¶¶ 54-58). These allegations are sufficient to plead *per se* antitrust violations. *See In re Dealer Mgmt. Sys. Antitrust Litig.,* 313 F. Supp. 3d 931, 951-52 (N.D. Ill 2018)

But even if the Court applied the more demanding Rule of Reason standard, the FAC presents sufficient allegations under that standard, as well. To satisfy the Rule of Reason, at the motion to dismiss stage, it is sufficient that the "plaintiff identify the relevant market affected by the challenged conduct and allege an actual adverse effect on competition in the identified market." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510 (N.D. Ill. 2019) (citing *Watkins v. Smith*, 2012 WL 5868395, at *7 (S.D.N.Y. Nov. 19, 2012) ("The rule-of-reason inquiry requires, at the motion to dismiss stage, that the plaintiff identify the relevant market affected by the challenged conduct and allege an actual adverse effect on competition in the identified market.")) Rule-of-Reason violations require that a plaintiff plead "anticompetitive effects," and "that the injury complained of be of a type that the antitrust laws were designed to guard against, and further that the antitrust violation be the direct cause of plaintiff's injury." *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 556 (7th Cir. 1980). This is a fact-intensive analysis. *See In re Dealer Mgmt.*

20

*Sys. Antitrust Litig.*, No. 18-CV-864, 2019 WL 334340, at \*15 (N.D. Ill. Jan. 25, 2019) (holding that "whether Defendant's conduct is justified under a rule-of-reason analysis cannot be determined at the motion to dismiss stage."); *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (rule of reason ultimately requires "the factfinder [to] weigh[ ] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition").  As demonstrated *supra* and *infra,* The Reapers properly plead the necessary elements of a Rule of Reason case.

### D.      The FAC Adequately Alleges Relevant Market

AHAI argues that The Reapers has failed to adequately define the Relevant Market.  Under *Agnew*, a Plaintiff must plead a geographic market and a product market, which is precisely what The Reapers did.  AHAI's assertion that The Reapers' pleading is deficient is belied by the numerous cases in which courts have held that similar allegations are sufficient to withstand a motion to dismiss.  *See Minn-Chim, Inc. v Agrium, Inc.*, 683 F. 3d 845, 858-59 (7th Cir. 2012; *Ploss v. Kraft Foos Corp., Inc.*, 197 F. Supp. 3d 1037, 1070 (N.D. Ill 2016); *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, No. 17C 5010, 208 WL 3861575, at \*4 (N.D. Ill. Aug. 14, 2018)

AHAI relies on two cases, *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001), and *Right Field Rooftops LLC v. Chi. Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 886 (N.D. Ill. 2015), but these cases do not support its position.  In *Todd*, the court rejected Defendant's argument that the Plaintiff "failed to explain how it is that accountants, lawyers, chemical engineers and other MPT employees in the oil and petrochemical industry are interchangeable with one another when the jobs they perform are so different," and instead agreed with plaintiff that "the interchangeability of these employees is not part of defining the relevant market." *Todd v. Exxon Corp.*, 275 F.3d 191, 201 (2d Cir. 2001).  AHAI does not explain how this holding undercuts The

21

Reapers' case, and in fact, it does not. And *Right Field Rooftops* involved professional baseball, which is subject to a Supreme Court-created exemption from the antitrust laws.

AHAI's "single brand" argument is also meritless. The relevant market here has four brands, not one—the four Club Defendants, Team Illinois, Chicago Mission, Chicago Fury, and Chicago Young Americans. Moreover, the FAC nowhere "acknowledges substitutes and competitors," contrary to AHAI's assertion.

### E. The FAC Adequately Alleges Market Power

AHAI next argues that The Reapers has alleged "no facts plausibly suggesting market power." (Dkt. 40, at 18.) That is untrue. Market power is the ability to charge a price persistently above competitive level despite existence of competitors. *Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 594 (7th Cir. 2008); see also *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 502-04 (1969); (defining market power as the ability of a seller to force buyers to pay a noncompetitive price for its goods); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) (stating definition as "the power to control prices or exclude competition").

The FAC alleges that AHAI has the power to bar the entry of all potential competitors from the Relevant Market, which it has done for almost 20 years, (FAC ¶¶ 41, 50-53), and by virtue of its successful efforts to deny services in a specific geographic area, artificially inflate prices, and artificially restrict player choice, (FAC ¶¶ 54-57). The FAC also alleges that AHAI has been able to impose and maintain these restrictions even in the face of skyrocketing demand for amateur youth hockey. (FAC ¶¶ 43-45, 67-68.) The allegations are more than adequate to plead the existence of AHAI's market power.

Moreover, even if The Reapers had wholly failed to allege the existence of any market power on the part of AHAI, that would not help AHAI here because "[a]s a matter of law, the absence of proof of market power does not justify a naked restriction on price or output." *NCAA*

22

*v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 109-110 (1984); *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460 (1986) (an agreement limiting consumer choice by impeding the ordinary give and take of the market place cannot be sustained under the Rule of Reason.") (internal citation omitted).

The *Indiana Federation of Dentists* case, which AHAI cites as an "example" of what The Reapers would have to plead in order to survive dismissal, does not establish a "floor" or minimum standard of what a Plaintiff must plead with respect to market power—quite the opposite. *Ind. Fed'n of Dentists*, 476 U.S. at 460-61. *Indiana Federation of Dentists*, like many of AHAI's cases, was not decided under Rule 12(b)(6)). It was decided after a lengthy regulatory proceeding, including a full hearing before an administrative law judge. It explains that, in the context of a far more developed record than exists at this stage of this case, "proof of actual detrimental effects, such as a reduction of output," can obviate the need for an inquiry into market power, which is but a "surrogate for detrimental effects." *Id.* at 460-61. The case provides no support for dismissal here.

AHAI argues that The Reapers has failed to allege market power because the FAC "does not even allege that AHAI charges any 'prices,' [or] how it acts upon 'market pricing,'" but The Reapers is not required to allege that AHAI charges prices to support Section 1 liability. *See Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 129 F. Supp. 3d 614, 638 (N.D. Ill. 2015); *Tondas v. Amateur Hockey Ass'n of U.S.*, 438 F. Supp. 310 (W.D.N.Y. 1977) (amateur hockey association was not immunized from the antitrust laws simply because it was not a competitor to plaintiff, since a noncompetitor who agrees, contracts or conspires with another to restrain trade or commerce is subject to the antitrust laws); *Amateur Softball Ass'n of America v. United States*, 467 F.2d 312 (10th Cir. 1972) (if a non-profit amateur sports association involved solely in amateur

23

athletics contracts, agrees or conspires to restrain trade or commerce in commercially sold articles, it is subject to the antitrust laws).[9]

### F. The FAC Satifies *Twombly*

AHAI asserts that the FAC "has not alleged any facts plausibly suggesting" an unlawful agreement. That is not true. Under *Twombly*, the FAC need only allege "enough facts to state a claim to relief that is plausible on its face," *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which its rests."). To make this showing at the pleading stage, a plaintiff must simply allege "the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 46 (1st Cir. 2013); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The Complaint need not "exclude every plausible interpretation of the facts that does not support [The Reapers'] theory of liability." *Kleen Prod., LLC v. Packaging Corp. of Am.*, 775 F. Supp. 2d 1071, 1078 (N.D. Ill. 2011). The FAC meets this standard.

Among other things, the Complaint describes: (i) a distinct group of specific individuals and the entities they represented, (FAC ¶ 51); (ii) who control 100% or virtually 100% of the market, (FAC ¶ 42); (iii) who reached an agreement to limit competition, (FAC ¶ 53); (iv) an approximate time period when the agreement was reached, (FAC ¶¶ 50-51); (v) the manner in which the individuals codified their agreement (by majority vote enacting the Four Club Restraint),

---

[9] AHAI criticizes The Reapers for "conspicuously omit[ting] any mention of how many applications for new Tier I teams were even submitted since 2001…". (Mot. at 18) This is a strange criticism, since that information is within the possession of the Defendants, at the Tier I Committee and AHAI Board, and that without discovery, that information is not fully available to The Reapers. In any event, if, as AHAI obliquely suggests, The Reapers is the only organization to formally apply to sponsor a Tier I club, a denial of only one application certainly can demonstrate the market power of an unaccountable organization that has codified a naked restraint in its bylaws. It's also most plausible to believe that at least some potential applicants have declined to even bother to apply.

(FAC ¶ 53); (vi) their motivation for participating in the conspiracy, (FAC ¶ 53); (vii) specific acts these and other individuals later took against The Reapers and in furtherance of the conspiracy, (FAC ¶¶ 58-65, 69-74, 78, 82-83, 94-114); and (viii) the negative effects of the conspirators' restraint of trade on competition in the Relevant Market, as measured by denial of services in a specific geographic area, artificially inflated prices, and artificially restricted player choice, (FAC ¶¶ 54-57). These allegations are more than sufficient to plausibly establish an antitrust conspiracy between AHAI and the Club Defendants.

AHAI asserts that no such agreement is plausible because the FAC doesn't allege that Club Defendant representatives actually voted on the Board's decision, and because the Club Defendants do not hold a majority of votes on AHAI's Board. (Dkt. 40 at 19) These assertions are irrelevant. As a threshold, The Reapers was excluded from the AHAI Board vote by the Board, so it couldn't make such specific allegations—based on AHAI's very conduct-- at the time of filing the FAC. In any event, if the Club Defendants did not vote on The Reapers' application, but joined and assisted the conspiracy in other ways, they, and AHAI, are liable under Section 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 975 (7th Cir. 1995) ("So long as defendants knew that they were acquiescing in conduct that was in all likelihood unlawful, we have no difficulty concluding that they thereby joined a combination or conspiracy for which they can be held accountable under section 1") (collecting cases); *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 46 (1st Cir. 2013). Proof of an explicit agreement is not required to plead a Sherman Act antitrust conspiracy claim. *United States v. General Motors Corp.*, 384 U.S. 127, 142-43 (1966). Even a "tacit understanding" among Defendants is sufficient. *United States v. Beaver*, 515 F.3d 730, 738 (7th Cir. 2008).

25

The FAC alleges sufficient factual information given the secretive nature of conspiracies (and particularly, the secretive nature of antitrust conspiracies), the early stage of the litigation, and the fact that the additional relevant information and documents can be expected to be in the possession of Defendants, not The Reapers. The Reapers has no obligation to produce a "smoking gun document" or "informants." AHAI's proposed standard would obliterate the notion of conspiracy liability.

AHAI relies on *Fishman* for the proposition that the Club Defendants' actions cannot constitute an unlawful agreement because the Seventh Circuit "has explicitly rejected imposing antitrust liability where competitors merely lobby a governing body and urge it to rule against other competitors." (Dkt. 40, at 19-20.) *Fishman* has no relevance here. First, it is distinguishable on grounds that the Club Defendants' alleged roles in the antitrust conspiracy go well beyond merely lobbying. Among other things, they are alleged to control AHAI both directly and indirectly, FAC ¶ 3, enrich themselves at the expense of their clubs, and their players and families, *id.*, and to have conspired with AHAI (a) to maintain and abuse AHAI's monopoly power over amateur hockey in Illinois; (b) to restrain competition and trade in the Tier I amateur youth hockey market in Illinois through an unlawful restraint; (c) to artificially inflate the price of participation in Tier 1 hockey in Illinois for their own financial benefit and to the detriment of players and player families; (d) to cover up unlawful and anti-competitive behavior by those affiliated with AHAI and/or the Club Defendants; (e) to deliver personal pecuniary benefits to a small group of individuals affiliated with AHAI and/or the Club Defendants; and (f) to bully and intimidate anyone who challenges them in these efforts, FAC ¶ 4.

*Fishman* is also distinguishable for the simple reason that it involved a suit by one competitor against another, and the court explicitly observed that both "were free to vigorously

compete for NBA approval." *Fishman v. Estate of Wirtz*, 807 F.2d 520, 544 (7th Cir. 1986). Here, The Reapers has plainly alleged that they have been deprived of the opportunity to vigorously compete for a charter in the manner that the parties in *Fishman* were allowed to do. (FAC ¶2) For these reasons, The Reapers has more than adequately alleged the existence of an unlawful agreement.

## V.     The Reapers Properly States a Claim for Sherman Act Section 2 Violations

To plead a cause of action for violation of Section 2 of the Sherman Act, The Reapers need only allege (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). AHAI, which controls admission to Tier I, is the only organization with the power to grant a charter to sponsor a Tier I club in Illinois, has "complete jurisdiction over all amateur hockey in the State of Illinois," and as such sanctions "all league and tournament play in the State," clearly possesses monopoly power in the Relevant Market. (FAC ¶ 40; *see, e.g.*, *Northwest Wholesale Stationers, Inc. v. Pac. Stationary and Printing Co.*, 472 U.S. 284, 298 (1985); *Bloyer v. St. Clair Cty. Illinois*, 179 F. Supp. 3d 843, 850 (S.D. Ill. 2016).

In the Seventh Circuit, exclusionary, predatory, or anticompetitive conduct is "conduct that is in itself an independent violation of the antitrust laws or that has no legitimate business justification other than to destroy or damage competition." *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 11-cv-268, 2013 WL 3214983, at *7 (N.D. Ind. Mar. 13, 2013). AHAI maintains and uses its monopoly power precisely to destroy or damage competition. (FAC ¶¶ 119-121.) This conduct violates Section 2 of the Sherman Act. *Aspen Skiing Co.*, 472 U.S. at 603, 610; *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 965 (N.D. Ill. 2018).

AHAI's argument to the contrary is incorrect, and relies entirely on (1) AHAI's counsel's unfounded and improper factual assertions that the Four Club Restraint is somehow

27

procompetitive (it is not); and (2) AHAI's mistaken claim that it is free to impose a naked restraint of trade and maintain its monopoly power under the law governing refusals to deal (it is not—*see, e.g.*, *Jamsports & Entm't, LLC. v. Paradama Prods.*, Inc., No. 02 C 2298, 2003 WL 1873563, at *13 (N.D. Ill. Apr. 15, 2003) (allegations about Defendant's efforts to coerce motor sports promoters and motorcycle manufacturers to refuse to deal with Plaintiff were sufficient to state a claim under Section 2). Here again, AHAI misleads. With respect to *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), AHAI asserts that the Supreme Court has since "confined that case to its facts." That is untrue. While the Court stated in, *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), that Aspen Skiing "is at or near the outer boundary of § 2 liability," that by no means suggests that it is confined to its facts or is otherwise not binding precedent. *Aspen Skiing* remains good law, is routinely favorably cited, and is controlling. *See, e.g.*, *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 278 (3d Cir. 2012) (citing *Aspen Skiing* post-*Trinko*); *Spirit Airlines, Inc. v. Nw. Airlines, Inc.*, 431 F.3d 917, 932 (6th Cir. 2005) (same); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008) (same); *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 840 (11th Cir. 2015) (same). For these reasons, The Reapers properly allege the elements of its Section 2 claim.

## VI.     The Reapers Properly States a Claim for Violation of the Illinois Consumer Fraud Act.

The Illinois Consumer Fraud Act ("ICFA") "is a regulatory and remedial statute intended to protect consumers ... against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). A plaintiff may recover under the ICFA "for unfair as well as deceptive conduct." *Robinson*, 775 N.E.2d at 960.

28

In interpreting unfair conduct under the ICFA, Illinois courts look to the federal interpretations of unfair conduct under section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45; *Robinson*, 775 N.E.2d at 960; 815 ILCS 505/2. Thus, three considerations guide an Illinois court's determination of whether conduct is unfair under the Consumer Fraud Act: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961. A court may find unfairness even if the claim does not satisfy all three criteria. *Id.* For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.*

Contrary to AHAI's assertion, the heightened pleading standard of Rule 9(b) does not apply to the Reapers' claim for unfair conduct under the ICFA. *Windy City Metal Fabricators*, 536 F.3d at 669; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008). Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b). *Windy City Metal Fabricators*, 536 F.3d at 669. Therefore, under federal notice pleading standards, the complaint need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative. *Windy City Metal Fabricators*, 536 F.3d at 669; *see also Twombly*, 127 S.Ct. at 1964; Fed. R. Civ. P. 8(a)(2).

The FAC meets this standard. The Reapers allege that Defendants' actions, described in the FAC, constitute unfair conduct because, among other things:

- It has abandoned its public charge, (FAC, at ¶ 2);

- It is systematically failing to govern Club Defendants in accord with USAH and AHAI rules, and applies its mission, bylaws and rules arbitrarily, (*id.*, at ¶¶ 5, 8, 10);

- It facilitates and turns a blind eye to abuses of the ostensibly "not-for-profit" Club Defendants' governance structure and tax exempt status, and allows the Club Defendants to be operated for the pecuniary benefit of a small number of individuals affiliated with those clubs (*id.*, at ¶¶ 3, 8, 54);

- It conducts itself in an arbitrary and capricious manner and abuses the discretion it has been entrusted with by USAH (*id.* at ¶ 10);

- It artificially restricted supply and raised prices so that Defendants could skim off profits from ostensibly "non-for-profit" enterprises (*id.* at ¶ 54);

- It artificially reduces supply and forces players and families to pay artificially inflated prices (*id.* at ¶¶ 4, 5, 8, 54)

These allegations are more than sufficient to state a claim for unfair conduct under the ICFA. *See, e.g.*, *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002-03 (7th Cir. 2018) ("Whether a practice is immoral, unethical, oppressive, or unscrupulous depends on whether it has left the consumer with little choice but to submit to it."); *Windy City Metal Fabricators*, 536 F.3d at 669; *Jackson v. Payday Fin.*, LLC, 79 F. Supp. 3d 779, 788 (N.D. Ill. 2015); *Underwriters Labs., Inc. v. Solarcom LLC*, No. 02 C 3933, 2002 WL 31103476, at *4 (N.D. Ill. Sept. 18, 2002); *Robinson*, 775 N.E.2d at 960.

AHAI argues that the Reapers' ICFA claim must be dismissed because the "limitations on Tier I membership" that it arbitrarily, capriciously, and unfairly imposed "foster[s] trade." (Dkt. 40 at 28.) This is yet another baseless and incorrect factual assertion by AHAI's counsel. No such facts are in the record, and because these assertions conflict with the Reapers' allegations in the FAC, AHAI's assertion must be rejected at the motion to dismiss stage. AHAI also argues that the Reapers' ICFA claim should be dismissed because the Reapers do not adequately allege that "certain Tier II clubs qualify for, but were unfairly or fraudulently left out of, Tier I." (Dkt. 40, at 28.) AHAI does not explain why the Reapers would be required to plead this, since the Reapers

30

is not seeking a Tier II charter and has not argued that any specific Tier II club, as a whole, should be elevated to Tier I. There is no requirement for the Reapers to plead such a thing. Nor is there a requirement for the Reapers to "show" that if AHAI were to accept a single new Tier I club, "that club would be the Reapers." (Dkt. 40, at 29.) "Showing" is a verb appropriate for summary judgment, not for Rule 12(b)(6) purposes. AHAI's motion to dismiss the Reapers' ICFA claim should be denied.[10]

### VII.    AHAI Failed to Respond to Plaintiff's Declaratory Judgment Claim In Count IV

This Court ordered Defendant AHAI to respond to the FAC by March 27, 2019.. Count IV of the FAC alleges a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, against all Defendants.  The basis for the claim includes substantial controversy between the parties with regard to the violations of Sections 1 and 2 of the Sherman Act, violations of the Illinois Consumer Fraud Act, but also stand-alone violations of USAH's and their own mission, bylaws, and rules, and stand-alone acts of arbitrary and capricious conduct. (FAC ¶ 147)

AHAI filed its Motion to Dismiss on March 27, 2019 but did not answer or otherwise plead to this Count in compliance with the Court's Order.  AHAI simply proclaimed that "Because Plaintiff's claims fail on the merits, this Court need not reach its claim under the Declaratory Judgment Act". (Dkt. 40 at 30, fn 8).  However, as demonstrated above, there are separate, independent grounds plead for the declaratory judgment act claim and those grounds have not been addressed by AHAI, either in a dispositive motion or answer.  Further, the case cited by AHAI for its position, *Illinois v. City of Chicago*, 137 F.3d 474,476 (7th Cir. 1998), is inapposite.  It doesn't

---

[10] AHAI, yet again, plays fast and loose with the facts when it asserts that "AHAI attended multiple attended multiple presentations by Plaintiff over many months." (Dkt. 40, at 30.)  AHAI did not just "attend" presentations—it invited Dry to attend its meetings and to make those presentations, as part of its makeshift application process, not the other way around.

31

save AHAI for its failure to respond. Accordingly, the Court should order AHAI to answer Count IV of the FAC.

## VIII. The Club Defendants' Motion to Dismiss Should be Denied.[11]

The Club Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) is based on a skewed and selective reading of the Reapers' well-pled allegations or on an incorrect application of the law. First, as to Counts I and IV, the Club Defendants argue that they did not adopt (and cannot change) the Four Club Restraint, which artificially restrained Tier I to "Not more than four (4) Tier I Youth Organizations fielding not more than eight (8) Tier I youth teams at any age level," and they did not refuse to consider the Reapers application for a Tier I charter. The allegations of the First Amended Complaint are to the contrary. Second, as to Counts III and IV, the Club Defendants incorrectly assert that the Reapers lack Article III standing to bring a claim against them because the Reapers purportedly have not alleged a case or controversy or an antitrust injury. Consequently, the Court should deny the Club Defendants' motion to dismiss in its entirety.

### A. Count I States an Antitrust Claim under Section I of the Sherman Act against the Club Defendants.

The Club Defendants' motion to dismiss Count I relies on an artificially high pleading standard that has been rejected in this Circuit. *In re Text Messaging Antitrust Litig.*, 630 F. 3d 622 (7th Cir. 2010), the Seventh Circuit cautioned that the "plausibility standard [enunciated in *Iqbal*] is not akin to a 'probability requirement.'" *Id*. at 629. The *Text Messaging* case involved an alleged conspiracy to fix prices of text messaging services in violation of Section 1 of the Sherman Act.

---

[11] Many of the arguments advanced by Club Defendants are also advanced by AHAI. Rather than repeat its same responses, the Reapers respectfully refers the Court to the remainder of the its brief.

The defendants moved to dismiss under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), arguing that plaintiffs' complaint merely alleged circumstantial facts of an agreement. In affirming the denial of defendants' motion to dismiss, the Seventh Circuit noted the following:

> The plaintiffs have conducted no discovery. Discovery may reveal the smoking gun or bring to light additional circumstantial evidence that further tilts the balance in favor of liability. All that we conclude at this early stage in the litigation is that the district judge was right to rule that the second amended complaint provides a sufficiently plausible case of price fixing to warrant allowing the plaintiffs to proceed to discovery.

*In re Text Messaging Antitrust Litigation*, 630 F. 3d at 629.

There is no reason that this case should be decided differently than the *Text Messaging* case at the pleading stage. The Club Defendants argue that the Reapers have not alleged "how, when, where or through which agents the Teams allegedly entered into agreements requiring AHAI to do those things." As a threshold, this form of heightened pleading – akin to pleading the newspaper requirements of fraud under Rule 9(b) – was rejected by the Seventh Circuit in *Text Messaging* and should be rejected here.

The Reapers allege in the FAC specific individuals, including, representatives of the Club Defendants such Mike Mullally, Michael Barrett and Gino Cavallini, who directly or indirectly engaged in conduct through the Tier I Committee and AHAI board, and who engage in ongoing anticompetitive and monopolistic behavior with AHAI in the Relevant Market. The FAC is replete with allegations of misconduct and financial reward based on the direct or indirect dealings between AHAI and the Club Defendants. (FAC ¶¶ 111-113.) The FAC also alleges the Club Defendants' repeated violations of AHAI's Rules & Regulations without any recourse or penalty. (FAC ¶ 103-109.) The Reapers also allege specific acts these and other individuals later took against The Reapers and in furtherance of a conspiracy and the negative effects of the conspirators' restraint of trade on competition in the Relevant Market, as measured by denial of services in a

33

specific geographic area, artificially inflated prices, and artificially restricted player choice. The FAC contains more than enough allegations of conspiratorial misconduct between AHAI and the Club Defendants.

To the extent that the Reapers have not alleged more details at this early stage about the conspiracy between the Club Defendants and AHAI or proverbial smoking gun, it is because the Reapers have conducted no discovery. *See In re Text Messaging Antitrust Litigation*, 630 F. 3d at 629 ("Discovery may reveal the smoking gun or bring to light additional circumstantial evidence that further tilts the balance in favor of liability.") As it stands, the Reapers allegations in the FAC state a plausible claim under Section 1 of the Sherman Act. *See e.g. MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 975 (7th Cir. 1995) ("So long as defendants knew that they were acquiescing in conduct that was in all likelihood unlawful, we have no difficulty concluding that they thereby joined a combination or conspiracy for which they can be held accountable under section 1") (collecting cases). Therefore, the Court should deny the Club Defendants' motion to dismiss as to Counts I, III and IV in its entirety.

### B. Count III and IV State Claims for Declaratory Relief against the Club Defendants.

As an initial matter, the Club Defendants' motion to dismiss fails to address the sufficiency of the Reapers' allegations in Count III of the FAC of deceptive and unfair business practices under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS §§ 505/1, *et seq*. Instead, the Club Defendants incorrectly claim that the Reapers seek only declaratory relief against them under Count III. Actually, in addition to declaratory relief, Count III asserts a claim for attorneys' fees and punitive damages. "Under Illinois law, punitive damages may be awarded for . . . violations of the ICFA based on unfair conduct in cases where the defendant acts maliciously or with deliberate indifference." *Wendorf v. Landers,* 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010); 815 ILCS

34

505/10a(a)). The Reapers allege in Count III that the Club Defendants conduct was willful and wanton, and caused substantial injury to Illinois consumers by artificially limiting the number of Tier 1 charters under the Four Club Restraint, preventing new clubs from competing equally with the Club Defendants, depriving consumers of the benefit of competition in the Relevant Market, and refusing to rescind the Four Club Restraint. These facts, if proven, are sufficient to submit the issue of punitive damages under Count III to a trier of fact. *In re Estate of Wernick*, 535 N.E.2d 876, 886 (Ill. 1989) ("If the facts of the case legally justify an award of punitive damages, the issue is then submitted to the trier of fact.").

The Club Defendants challenge Count VI on standing grounds under Article III of the United States Constitution based on a selective and incomplete reading of the FAC. According to the Club Defendants, the FAC does not establish a case or controversy between the Reapers and the Club Defendants and the Reapers do not allege an injury fairly traceable to them. That is not true. As detailed throughout the myriad allegations in the FAC, the Reapers identify many instances of the Club Defendants' conduct that caused injuries fairly traceable to the Club Defendants. As explained in Section I, *supra*, and preliminarily in earlier briefing (*see* Dkt. 22 at 2-3, Dkt. 49, at 2-4), the Reapers has standing under Article III to bring claims against defendants in this case.

The Reapers' FAC demonstrates that there is a substantial controversy between itself and the Club Defendants as to whether the Club Defendants can cause AHAI to apply its and USAH's mission, bylaws and rules in an arbitrary and capricious manner, and otherwise allow "themselves to be involved in deciding issues relating to the number of Tier 1 charters AHAI should issues and which clubs should be awarded those charters, despite their disqualifying conflicts." (FAC ¶¶ 3, 58-62) The Reapers also allege in the FAC that the Club Defendants' representatives sit both on

the Tier I Committee and AHAI and, by and through these dual representatives, the Club Defendants exercise direct and indirect control over AHAI and impact competition in the Relevant Market. (FAC ¶147) The Reapers further allege that the Tier I Committee controlled by these dual representatives has explicit authority to "recommend 'granting or terminating of authority to organize and/or operate a Tier I organization, club, or association,' and the authority to recommend modifying 'the total number of Tier I Teams permitted in any age division.'" (FAC ¶ 60 (citing AHAI Rule 16.1); *see also* FAC ¶¶ 59-62, 78, 80-85 (alleging the Club Defendants' influence on AHAI through the Tier I Committee and the overlap between the Club Defendants and AHAI).

The Reapers' FAC also alleges an antitrust injury that is traceable to the Club Defendants. When determining whether a plaintiff has sufficiently pled an antitrust injury, courts evaluate if the "claimed injuries are 'of the type the antitrust laws were intended to prevent' and 'reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The Reapers' allegations in the FAC satisfy this requirement. The Reapers allege that the Club Defendants' acts or omissions harmed competition by limiting supply to a specific geographic area, which has resulted in artificially and substantially inflated prices and limited consumer choice. The Reapers also allege that the Club Defendants harmed the Reapers when they used their direct or indirect control and influence of AHAI to bar the Reapers from entering the Relevant Market, causing significant delays, missed recruiting, hiring, training, leasing, and other opportunities necessary to form organized, competitive amateur youth hockey teams for the 2019-2020 youth hockey season. The Reapers' well-pled allegations sufficiently state antitrust injuries at the pleading stage. *See, e.g.*, *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983) (the Sherman Act "was enacted to assure customers the benefits of price competition"); *See*

36

*also Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 900 (N.D. Ill. 2009) (competitor's allegation that Defendants' actions "had an effect on its ability to compete in the market" stated plausible claim).

Because there are no bases to deny that the Reapers has Article III standing to bring its claims against the Club Defendants, the Club Defendants' motion to dismiss Counts III and IV should be denied. The Court should deny the Club Defendants' motion to dismiss as to Counts III and IV in its entirety.[12]

**Conclusion**

For all of the foregoing reasons, Defendants' motions should be denied.

---

[12] The Club Defendants also purport to join in AHAI's motion to dismiss. Accordingly, the Reapers incorporate by reference its opposition to AHAI's motion to dismiss as if fully stated herein.

37

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the **12th day of April, 2019**, a true and correct copy of the foregoing **PLAINTIFF REAPERS HOCKEY ASSOCIATION INC.'S OMNIBUS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**, was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, using the Court's CM/ECF System, which shall send notification of such filing to all parties registered to use ECF or are represented by a registered E-filer. Parties may access this filing through the Court's CM/ECF System.

/s/ Shawn J. Gebhardt
Shawn J. Gebhardt
Ulmer & Berne LLP
500 W. Madison St., Suite 3600
Chicago, IL 60661
312-658-6500 (phone)
312-658-6501 (fax)
sgebhardt@ulmer.com